ROGERS, Justice.
 

 In a suit by • Antoine Luke Dufrene against Eugene Bernstein, this Court, maintaining plaintiff’s contentions, established the boundary line between the holdings of the parties in a peninsular tract of land, known as “The Temple,” on the Island of Barataría in the Parish of Jefferson. The decision was rendered on May
 
 2,
 
 1938, and a rehearing was denied on May 30, 1938. See Dufrene v. Bernstein, 190 La. 66, 181 So. 859.
 

 On July 27, 1938, Antoine Luke Dufrene brought this suit against Eugene Bernstein for an accounting by defendant “for all income from the oil lease or leases of the land which was in dispute and for all muskrats taken by him and those whom he placed on the land that was in dispute during the fur-trapping season 1936-37, and the fur-trapping season 1937-38, and an accounting from him for such other revenues as he may have derived from the land which was in dispute' in the aforesaid suit.”
 

 Plaintiff, in his petition, alleged that during the pendency and prior to the trial of the boundary suit in the district court, he
 
 *578
 
 entered into a written compromise agreement with the defendant to cover petitioner’s possible loss for the fur-trapping season 1936-37, whereby the defendant deposited $800 in homestead stock with his attorney to await the outcome of the suit and in the event plaintiff was successful, the homestead stock was to be delivered to plaintiff for his “trapping loss through the fur-trapping season 1936-37.” Defendant filed a motion for oyer of the compromise agreement, and, when it was produced by plaintiff, defendant filed an exception of no right or cause of action. The exception was maintained and plaintiff’s suit was dismissed. Plaintiff moved for a new trial, and when the motion was heard, it was taken under advisement by the judge of the district court who later rendered a judgment in accordance with an agreement entered into between the parties. In the agreement, which was reduced to judgment, it was stipulated that Bernstein should immediately deliver to Dufrene or his attorney the $800 of homestead stock which was deposited with Bernstein’s attorney; that the motion for a new trial should be dismissed; and that the judgment dismissing plaintiff’s suit on the exception of no cause of action should remain the judgment of the court. It was further stipulated in the agreement and decreed in. the judgment that the acceptance by Dufrene of the homestead stock should not be considered as a waiver by him of his right to appeal from the judgment dismissing his suit so far as it involved the question of an accounting by defendant of the profits of his fur-trapping operations during the season of 1937-38. In accordance with the terms of the consent judgment, Bernstein’s attorney promptly delivered to plaintiff the $800 of homestead stock held by him in escrow.
 

 As a result of the agreement between the parties and the judgment rendered in accordance therewith, the only question at issue on this appeal, which is being prosecuted by plaintiff, is whether plaintiff is entitled to an accounting by defendant for the revenues which he may have derived from his fur-trapping operations for the season 1937-38 on the property in dispute in the first suit.
 

 In order to properly determine this issue, it becomes necessary to analyze the compromise agreement entered into between the parties on November 17, 1936. Plaintiff contends that the agreement covered only the fur-trapping season of 1936-37. Defendant contends that the agreement covered not only the season of 1936-37, but also every ensuing fur-trapping season until the action in boundary was finally determined. The trial judge accepted defendant’s contention as correct and therefore sustained the exception of no cause of action.
 

 The compromise agreement between the parties reads as follows:
 

 “New Orleans, November 17, 1936.
 

 “This agreement entered into on this the seventeenth day of November, 1936, by and between Antoine Luke Dufrene, of Des Allemands, Louisiana, and Eugene Bernstein, of New Orleans, Louisiana, both
 
 *580
 
 persons above the full age of majority; and,
 

 “Whereas, Antoine Luke Dufrene filed an action of boundary against Eugene Bernstein in the Twenty-fourth Judicial District Court for the Parish of Jefferson, State of Louisiana, being #12,000 of the Docket of the aforesaid Court; and whereas there is a dispute between the parties to this agreement as to the ownership of approximately 2,800 feet of land extending south of a pirogue canal, which Antoine Luke Dufrene claims is the northern boundary line of his property, and Eugene Bernstein contends that his property extends approximately 2,800 feet south of the aforesaid pirogue canal, and whereas Eugene Bernstein has leased for the trapping season, to the following parties: Dominick Gisclair, Louis Gisclair, Freddie Gisclair, Voltaire Pete, Dumas Pete, Andrew St. Piere, Clofour Rousse, Irly Williams, Andrew Williams, Reny Toups, Reny Toups, Jr., Leonise Toups, Loco Cheramie, Leonce Bruce, Sidney Duet, Adam Cheramie, his land known as the Little Temple Island; and whereas, Antoine Luke Dufrene proposes to enjoin Eugene Bernstein, and the aforementioned parties, from trapping south of the pirogue canal, which Antoine Luke Dufrene contends is the northern boundary of his land.
 

 “Now therefore, be it understood,. covenanted, contracted and agreed that in consideration of Antoine Luke Dufrene not filing an injunction suit, and not molesting the lessors of Eugene Bernstein from trapping approximately 2,800 feet south of the pirogue canal which Antoine Luke Dufrene contends is the northern boundary of his land, Eugene Bernstein does hereby deposit with Hugh M. Wilkinson, homestead stock in an insured homestead 'of the full and true value of $800, which is to remain in trust in the hands of Hugh M. Wilkinson, duly endorsed by Eugene Bernstein, to await the outcome of the action of boundary instituted by Antoine Luke Dufrene, being suit #12,000 of the Docket of the Twenty-fourth Judicial District Court, Parish of Jefferson, State of Louisiana, and in the event Antoine Luke Dufrene is successful in the aforesaid suit, he shall be entitled to full possession and ownership of the duly endorsed homestead stock of Eugene Bernstein, in the amount of $800.00, as liquidated damages, and in the event he is only partially successful, he shall be entitled to the proportionate part of the aforesaid homestead stock as he is 'proportionately successful in the aforesaid suit.
 

 “It is further agreed that Eugene Bernstein agrees that Hugh M. Wilkinson may-turn over to Antoine Luke Dufrene, or his attorney of record, William A. Porteous, Jr., the $800.00 worth of homestead stock, or a proportionate part as he may be proportionately successful in the aforesaid suit.
 

 “It is further agreed that in the event Antoine Luke Dufrene is not successful Hugh M. Wilkinson will return the home-, stead stock to Eugene Bernstein.
 

 “It is further agreed that this agreement shall be binding until the judgment is final, and is to remain in full force and effect until a final judgment is rendered by the District
 
 *582
 
 Court, or in the event of an appeal, until a final judgment is rendered by the Supreme Court of Louisiana.
 

 “It is further agreed that neither party will trap within fifty feet from the line in dispute. There will, therefore, be one hundred feet between their line of traps.
 

 “It is further agreed that this contract will not be introduced in evidence, or considered in any manner in connection with the action of boundary herefore set forth, as this agreement is in the nature of a compromise, and nothing said or done herein shall be used by either party in connection with the action of boundary, nor shall this agreement be admissible in evidence in the aforesaid suit.”
 

 In support of his contention that the escrow agreement was not to apply merely to one trapping season but was to apply to all the seasons befalling in due course until the boundary suit should finally be decided, defendant points to the provisions of the sixth paragraph of the agreement. This paragraph reads as follows:
 

 “It is further agreed that this agreement shall be binding until the judgment is final, and is to remain in full force and effect until a final judgment is rendered by the District Court, or in the event of an appeal, until a final judgment is rendered by the Supreme Court of Louisiana.”
 

 The mere reading of the quoted paragraph discloses that it does not cover the substance of the agreement, but merely fixes its duration. It is in the nature of a suspensive condition, which suspended the execution of the principal obligations of the parties under the agreement until the happening of a certain event — i. e., the final judgment in the boundary suit.
 

 It is elementary that all provisions of a contract should be read together in order to determine the meaning of each provision.
 

 The recitals of the agreement under review in this case show the circumstances under which.it was made.
 

 The fur-trapping season begins on the 20th day of November in each year and ends in the month of February the following year. The agreement was signed on November 17, 1936, which was three days before the beginning of the fur-trapping season of 1936-37. The agreement, on its face, shows that Dufrene had filed the boundary suit against Bernstein and that Bernstein had leased the property in dispute “for the trapping season” to sixteen trappers whose names are given. The agreement further shows that Dufrene proposed to enjoin Bernstein and his lessees from trapping on the property in dispute and that in consideration of Dufrene not filing the injunction suit and not molesting Bernstein’s lessees, Bernstein deposited with his attorney $800 of homestead stock tó be held pending the outcome of the boundary suit; that in the event Dufrene should be successful in his suit, he would be entitled to the ownership and possession of all the homestead stock as liquidated damages, and in the event he should be partially successful, he would be entitled to a proportionate part of the stock; and that in-the event he should not be success
 
 *584
 
 ful in the suit, the homestead stock would be returned to Bernstein.
 

 Bernstein, who had leased the tract of land in dispute to sixteen fur trappers for the season of 1936-37, which was to open in a few days, was faced with the injunction suit Dufrene proposed to bring against him and his lessees. In order to prevent the suit and the consequent loss that would result to him if Dufrene should be successful in the boundary suit, Bernstein was willing to pay Dufrene $800, represented by the homestead stock, as liquidated damages to cover the loss Dufrene might suffer by reason of Bernstein and his lessees trapping the land in dispute during the season covered by the leases. On the other hand, Dufrene was willing to forego his suit for injunctive relief and to agree upon $800 as the amount of the damages he might suffer on account of Bernstein and his lessees trapping on his land, if he was successful in the boundary suit. It is obvious that if the property in dispute had not been under lease for the trapping season of 1936-37, there would have been no reason for Dufrene to threaten to sue for an injunction and for the parties to enter into an escrow agreement to, prevent the suit and to fix $800 as the amount of damages due Dufrene because of Bernstein’s trapping operations on the property, should the court decide Dufrene owned the property.
 

 It was clearly not within the intendment of the parties that the escrow agreement should cover anything more than the trapping season of 1936-37 which was to follow its execution in only a few days, because the agreement itself refers only to one season and the leases covering only one season. Moreover, it is not reasonable to assume that the parties would enter into an agreement covering more than one trapping season, because they could not foresee that the boundary suit would not be decided before the advent of another season, nor could they contemplate that Bernstein would lease the property again for trapping purposes, thereby subjecting himself to further claims for damages and suits for injunctive relief.
 

 Our conclusion is that the escrow agreement applied only to the fur-trapping season of 1936-37, and that plaintiff’s petition discloses a right or c.ause of action to demand an accounting for the fur-trapping seasomof 1937-38.
 

 For the reasons assigned, the judgment appealed from is annulled, the exception of no right or cause of action is overruled, and the case is remanded to the district court for further proceedings consistent with the views herein expressed. Costs of this proceeding are to be paid by defendant, all other costs to await the final disposition of the case.